UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | NO. 2:06-CR-76 |
| | ) | |
| TOBIAS FLORES AGUIRRE | ) | |

# **REPORT AND RECOMMENDATION**

The defendant has filed a motion to suppress any evidence seized as a result of a search of the premises at 1089 Wilburn Road, Whitesburg, Tennessee, on October 26, 2006. (Doc. 27).

This motion has been referred to the United States Magistrate Judge under the standing orders of this Court and pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on January 11, 2007.

The search at 1089 Wilburn Road in Whitesburg, Tennessee, was based on a search warrant issued by the magistrate judge of this court on October 26, 2006. Defendant argues that the affidavit filed in support of the application for the search warrant lacked the requisite probable cause to justify the issuance of the warrant. Specifically, defendant argues that the affidavit is a mere recitation of conclusory opinions, and that the facts establishing probable cause are stale. Defendant also argues that the affidavit failed to establish the reliability of the confidential informant who conveyed information to the

affiant which in turn the magistrate judge relied upon.

Special Agent Andrew Chapman of the Federal Bureau of Investigation was the applicant for the search warrant. His application specifically sought permission to search the premises at 1089 Wilburn Road in Whitesburg, Tennessee for cocaine and cocaine base, as well as for various materials, documents, and records relating to drug trafficking. Special Agent Chapman also was the affiant who signed the affidavit in support of the application. Agent Chapman commenced his affidavit by stating that he was involved in an on-going investigation of a cocaine and crack cocaine distribution organization in the Morristown and Hamblen County area. He pointed out that there were two locations which he wished to search: a single family residence located at 1089 Wilburn Road in Whitesburg, Tennessee, and a business in Morristown known as Chavez Body Shop and Auto Repair. It is only the dwelling at 1089 Wilburn Road that is the subject of the instant motion to suppress and this report and recommendation.

Agent Chapman stated in his affidavit that he knew only that the resident at 1089 Wilburn Road was an Hispanic male; he elected to refer to him as "Viper."[1]

Most of the information in Agent Chapman's affidavit concerns Chavez and Chavez's businesses - an automobile body shop and an auto parts business. In paragraph nine of the affidavit, Agent Chapman states that a confidential source ("CS") had reported

---

[1] "Viper" was the model of the car driven by the individual now known to be the defendant Aguirre.

to him that he (CS) had several drug transactions with Chavez at his body shop business in Morristown. Some time in the summer of 2005, CS reported to Agent Chapman that he first met Viper and observed Viper pay for drugs which Chavez took possession of. Agent Chapman recites: "the reliability of this information provided by the CS is now corroborated by controlled purchases of drugs from Chavez and/or Viper by the CS, which will be detailed herein."[2]

In June and July of 2006, the CS made four *controlled* purchases of cocaine or crack cocaine from Chavez. Specifically, on June 7, 2006, while equipped with a recording device monitored by law enforcement agents, the CS purchased cocaine from Chavez at his body shop in Morristown.[3] On July 3, 2006, the CS went to the other business owned by Chavez, G&G Auto Parts, where he purchased cocaine from Chavez. As before, the CS was equipped with a recording device and was under the surveillance by law enforcement agents. A few hours later, the CS had another drug transaction with Chavez, which also was surveilled by law enforcement agents. On July 11, 2006, the CS met Mr. Chavez at the auto parts business and gave Mr. Chavez $2,550.00 in marked Government currency to purchase crack cocaine. The CS was required to wait some amount of time for the crack to actually be delivered. The CS ultimately reported to Agent Chapman that he saw Viper arrive in a vehicle and give Chavez an air filter box which

---

[2]Affidavit, ¶ 9.

[3]Affidavit, ¶ 11.

3

Chavez carried back into the building with him. In full view of the CS, Chavez reached into this air filter box and produced the crack cocaine for which the CS earlier had paid. Again, this transaction was surveilled by law enforcement agents, including the arrival and departure of Viper.[4]

On October 24, 2006, CS was instructed by Agent Chapman to purchase additional crack cocaine from Chavez. Chavez and the CS arranged for the transaction to take place at the body shop in Morristown.

After the CS and Chavez arranged for this drug deal, law enforcement agents commenced surveillance not only at Viper's residence in Whitesburg, as described in ¶ 14 of the affidavit, but also at Chavez's body shop where the transaction was to take place. As on prior occasions, the CS was equipped with a recording device, and he had been provided with marked Government currency with which to purchase the crack. When the CS inquired about the location of the drugs, Chavez responded "he's on his way." Thereafter, the surveilling agents observed Viper's arrival at the body shop. Chavez went outside and met with Viper, subsequently returning with an auto parts box in his hand. This time, rather than reaching into the box for the drugs, Chavez pulled drugs out of his pocket which he gave to the CS.[5] As Viper left the body shop business, he was followed by law enforcement agents back to his residence on Wilburn Road.

---

[4] Affidavit, ¶ 13.

[5] This time, the drug was not crack, but powder cocaine.

4

After Viper's arrest, it was learned that his name was Tobias Flores Aguirre.

*STALENESS:*

Defendant argues that the information in Agent Chapman's affidavit was stale.

There is no arbitrary or bright-line time limitation after which information in an affidavit becomes stale. The question of staleness with respect to the information supporting probable cause depends upon the nature of the crime, the criminal, the place to be searched, and the thing to be seized. *See, e.g., United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998). Agent Chapman's recitation of facts commences with events in June and July of 2006. Bearing in mind the continuing nature of the drug trafficking business, it hardly can be said that those facts were stale inasmuch as the affidavit was presented to this magistrate judge in October, 2006. Moreover, Agent Chapman merely laid out a series of events that culminated with a drug transaction that occurred on October 24, 2006, only two days before he presented his affidavit to the magistrate judge. The events set out in his affidavit that occurred on dates prior to the October 24, 2006 drug transaction simply supplied meaningful - indeed, necessary - background information to the transaction that ultimately occurred on October 24, 2006. The information was not stale.

*THE INFORMANT'S RELIABILITY:*

Defendant also argues that much of the information set out in Agent Chapman's affidavit was supplied to him by a confidential informant, whose trustworthiness and reliability was not sufficiently addressed in the affidavit. Respectfully, the court disagrees.

5

Prior to 1983, when information supplied by an informant constituted the probable cause to be relied upon by the judge issuing a search warrant, the Supreme Court required that the judge make an independent determination of (1) the credibility of the informant and (2) the reliability of the informant's information. *Aguilar v. Texas*, 378 U.S. 108 (1964), and *Spinelli v. United States*, 393 U.S. 410 (1969). That two-prong test was abandoned in 1983 in favor of a "totality of the circumstances" approach to determine probable cause. *Illinois v. Gates*, 462 U.S. 213 (1983). After *Gates*, the issuing magistrate is charged with making a practical, common-sense decision whether, given the matters set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place. An informant's reliability and the basis for his knowledge is simply one factor among several that enters into the "totality of the circumstances" test. *Massachusetts v. Upton*, 466 U.S. 727 (1984).

In ¶ 9 of the affidavit, Agent Chapman states that the reliability of the information provided by the CS has been "corroborated by controlled purchases of drugs from Chavez and/or Viper by the CS . . .." The subsequent drug transactions between Chavez and the CS were surveilled, monitored, and recorded by law enforcement agents which, it is respectfully suggested, is the ultimate corroboration. The observation by law enforcement agents of the informant's repeated purchase of drugs from Chavez, and Viper's relationship to those transactions, provided adequate corroboration. Actually, the reliability *vel non* of the CS is irrelevant. Probable cause was established by Chavez's and Viper's activities

which were observed by law enforcement agents, independent of any statements by the CS.

### *CONCLUSORY ASSERTIONS:*

Lastly, defendant argues that Chapman's affidavit is but a collection of conclusions and "feelings" which cannot constitute probable cause. The affidavit describes a series of surveilled and monitored drug transactions between Chavez and the informant, and Viper's observed presence at two of these drug transactions. Viper was seen on one occasion to give an air filter box to Chavez, from which Chavez withdrew the crack cocaine to deliver to the informant. Although this latter information undeniably was provided to Chapman by the informant, it must be remembered that the informant's reliability had been well established by his repeated drug transactions with Chavez. Moreover, Viper's arrival and departure during the drug transactions between Chavez and the informant would reasonably arouse the suspicions of even the most naive individual, and constituted probable cause to believe that Viper was a participant in the transaction, even without the statement of the CS regarding the source of the crack cocaine in the box. In short, there was more than sufficient probable cause to believe that Mr. Aguirre was Mr. Chavez's supplier of illegal drugs.

### *PROBABLE CAUSE TO SEARCH RESIDENCE AT 1089 WILBURN ROAD:*

Then the last question: Was there probable cause to search the residence at 1089 Wilburn Road in Whitesburg?

The question before this court is whether an affidavit

> containing credible, verified allegations of drug trafficking, verification that said defendant lives at a particular residence, combined with the affiant-officer's experience that drug dealers keep evidence of dealing at their residence, when there is absolutely no indication of any wrongdoing occurring at that residence, establishes probable cause for the issuance of the warrant to search that residence. We are inclined to answer in the affirmative and side with our sister Circuits in believing that *it is a reasonable inference that "in the case of drug dealers, evidence is likely to be found where the dealers reside.*"

*United States v. Goward*, 2006 WL 1952282 (6th Cir. 2006). (Italics supplied).

But finding there was probable cause to search Viper's residence for illegal drugs somewhat begs the question: Was there probable cause to search 1089 Wilburn Road in Whitesburg? I.e., was 1089 Wilburn Road in Whitesburg adequately demonstrated to be *Viper's* residence?

In connection with the October 24 drug deal, law enforcement agents established surveillance on Viper's residence. Agent Chapman recited in ¶ 14 of his affidavit that the agents had confirmed that the "above-described" residence was Viper's home. First, Viper had been involved in a traffic stop while driving a vehicle registered in the name of Carmen Flores who lived at "that address." Further, the agents had observed Viper's vehicle parked at "that address" on several occasions and he had been seen arriving at and leaving that residence numerous times before October 24, 2006. Further, at the time of the drug transaction was set up by the CS on October 24, 2006, the surveilling agents observed Viper's vehicle "at his residence."

What is readily apparent from the foregoing is that nowhere in ¶ 14 of the Affidavit is the residence described in any manner whatsoever other than by a reference to "the above-described residence." Fortunately, Paragraph 4 of the affidavit states that the two places which are to be searched are a single family residence located at 1089 Wilburn Road in Whitesburg, and a business known as Chavez Body Shop and Auto Repair. Although the affidavit should have been better drafted in this regard, the magistrate judge knew at the time, and still knows, that the words "above-described residence" in ¶ 14 of the affidavit referred to the more detailed description of "1089 Wilburn Road, Whitesburg, Tennessee 3789" in ¶ 4 of the affidavit. Moreover, the last sentence in ¶ 15 of the affidavit recites that Viper had been observed by the agents returning directly to his home on *Wilburn Road*. Accordingly, as far as the affidavit adequately identifying the premises to be searched - 1089 Wilburn Road, Whitesburg, Tennessee - the affidavit is inartful, but adequate.

*CONCLUSION:*

The facts stated in Agent Chapman's affidavit were not stale, and to the extent that information provided by the confidential informant constituted a part of the probable cause equation,[6] the informant's reliability was adequately established by the personal observations of law enforcement agents. Further, the facts in the affidavit were not "conclusory." Therefore, it is respectfully recommended that defendant's motion to

---

[6] And it was, frankly, very little in the final analysis.

suppress be denied.

Any objections to this report and recommendation must be filed within ten (10) days of its service or further appeal will be waived. 28 U.S.C. § 636(b)(1)(B) and (C). *United States v. Walters*, 638 F.2d 947-950 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

Respectfully submitted,

s/Dennis H. Inman
Dennis H. Inman
United States Magistrate Judge