UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


UNITED STATES OF AMERICA       )
                                       )
v.                                      )        NO. 2:06-CR-76
                                       )
TOBIAS FLORES AGUIRRE       )


# O R D E R

This criminal matter is before the Court to consider the Report and

Recommendation of the United States Magistrate Judge dated January 17, 2007.

In that Report and Recommendation, the Magistrate Judge recommends that the

defendant's  motion to suppress evidence obtained as a result of the execution of a

search warrant at his residence be denied.   The defendant has filed an objection to

this recommendation. [Doc. 43].  After careful consideration of the record as a

whole, including the transcript of the hearing on January 11, 2007, which contains

only oral argument, the Court makes the following findings of fact and conclusions

of law:

## FINDINGS OF FACT

This Court adopts the facts as set out in the Magistrate Judge's  Report and

Recommendation:

1

Special Agent Andrew Chapman of the Federal Bureau of Investigation was the applicant for the search warrant. His application specifically sought permission to search the premises at 1089 Wilburn Road in Whitesburg, Tennessee for cocaine and cocaine base, as well as for various materials, documents, and records relating to drug trafficking.

Special Agent Chapman also was the affiant who signed the affidavit in support of the application. Agent Chapman commenced his affidavit by stating that he was involved in an on-going investigation of a cocaine and crack cocaine distribution organization in the Morristown and Hamblen County area. He pointed out that there were two locations which he wished to search: a single family residence located at 1089 Wilburn Road in Whitesburg, Tennessee, and a business in Morristown known as Chavez Body Shop and Auto Repair. It is only the dwelling at 1089 Wilburn Road that is the subject of the instant motion to suppress.

Agent Chapman stated in his affidavit that he knew only that the resident at 1089 Wilburn Road was an Hispanic male; he elected to refer to him as "Viper."   Most of the information in Agent Chapman's affidavit concerns Chavez and Chavez's businesses - an automobile body shop and an auto parts business. In paragraph nine of the affidavit, Agent Chapman states that a confidential source ("CS") had reported to him that he (CS) had several drug transactions with Chavez

at his body shop business in Morristown. Some time in the summer of 2005, CS reported to Agent Chapman that he first met Viper and observed Viper pay for drugs which Chavez took possession of. AgentChapman recites: "the reliability of this information provided by the CS is now corroborated by controlled purchases of drugs from Chavez and/or Viper by the CS, which will be detailed herein."

In June and July of 2006, the CS made four controlled purchases of cocaine or crack cocaine from Chavez. Specifically, on June 7, 2006, while equipped with a recording device monitored by law enforcement agents, the CS purchased cocaine from Chavez at his body shop in Morristown. On July 3, 2006, the CS went to the other business owned by Chavez, G&G Auto Parts, where he purchased cocaine from Chavez. As before, the CS was equipped with a recording device and was under the surveillance by law enforcement agents.

A few hours later, the CS had another drug transaction with Chavez, which also was surveilled by law enforcement agents. On July 11, 2006, the CS met Chavez at the auto parts business and gave Chavez $2,550.00 in marked Government currency to purchase crack cocaine. The CS was required to wait some amount of time for the crack to actually be delivered. The CS ultimately reported to Agent Chapman that he saw Viper arrive in a vehicle and give Chavez an air filter box which Chavez carried back into the building with him. In full view

of the CS, Chavez reached into this air filter box and produced the crack cocaine for which the CS earlier had paid. Again, this transaction was surveilled by law enforcement agents, including the arrival and departure of Viper.

On October 24, 2006, CS was instructed by Agent Chapman to purchase additional crack cocaine from Chavez. Chavez and the CS arranged for the transaction to take place at the body shop in Morristown.

After the CS and Chavez arranged for this drug deal, law enforcement agents commenced surveillance not only at Viper's residence in Whitesburg, as described in ¶ 14 of the affidavit, but also at Chavez's body shop where the transaction was to take place.

As on prior occasions, the CS was equipped with a recording device, and he had been provided with marked Government currency with which to purchase the crack. When the CS inquired about the location of the drugs, Chavez responded "he's on his way."

Thereafter, the surveilling agents observed Viper's arrival at the body shop. Chavez went outside and met with Viper, subsequently returning with an auto parts box in his hand. This time, rather than reaching into the box for the drugs, Chavez pulled drugs out of his pocket which he gave to the CS. As Viper left the body shop business, he was followed by law enforcement agents back to

his residence on Wilburn Road.

After Viper's arrest, it was learned that his name was Tobias Flores Aguirre.

## CONCLUSIONS OF LAW

The defendant contends that the affidavit filed in support of the search warrant fails to establish the reliability of the confidential informant.  In *United States v. Harris*, 255 F.3d 288, 293(6th Cir. 2001), a detective arranged  two controlled purchases from an address to corroborate the informant's tip prior to seeking a search warrant. Similarly, in this case, five (5) controlled purchases were made by the confidential informant before the agents sought a search warrant for the residence of the defendant.   Four controlled buys were made in June and July of 2006, and the last controlled buy was made on October 24, 2006 which was only two days prior to the application for the search warrant.  During two (2) of those controlled purchases, the drugs were not available until the defendant arrived on the scene.   During the last controlled purchase, agents determined that the defendant was at his residence prior to the controlled buy, and that when he arrived at the body shop the time frame involved indicated he must have driven directly from his residence to the body shop.  Based upon the five controlled buys in this case, the Court FINDS that the information given by the confidential informant

was corroborated and reliable.

The defendant also contends that the information contained in the search warrant is stale. Based upon the four controlled buys that were made in June and July of 2006, and the controlled buy which was made on October 24, 2006, the Court FINDS that the crime of drug trafficking in this case was ongoing. It is well settled that "[e]vidence of ongoing criminal activity will generally defeat a claim of staleness." *United States v. Greene*, 250 F.3d 471, 481 (6th Cir.2001). Therefore, the Court FINDS that the information contained in the affidavit in regard to the defendant's involvement in drug sales in 2005 and on July 11, 2006 was not stale.

This Court FINDS that the magistrate judge who issued the search warrant had a substantial basis for finding there was a fair probability that evidence of criminal activity would be found at the defendant's residence, and that there is no evidence that the magistrate judge arbitrarily exercised his discretion in issuing this search warrant.

## CONCLUSION

Accordingly, after careful consideration of the Report and Recommendation of the United States Magistrate Judge, and for the reasons set out in that Report and Recommendation which are incorporated by reference herein,

it is hereby **ORDERED** that the defendant's objections are **OVERRULED**, that

the Report and Recommendation is **ADOPTED** and **APPROVED**, [Doc. 41], and

that the defendant's motion to suppress is **DENIED.** [Doc. 27].


E N T E R:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
