UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

| | |
|---|---|
| TOBIAS FLORES AGUIRRE, )<br>      Petitioner, )<br>)<br>V. )<br>)<br>UNITED STATES OF AMERICA, )<br>      Respondent. ) | NO. 2:06-CR-76<br>NO. 2:10-CV-276 |

**MEMORANDUM OPINION**

Tobias F. Aguirre ("petitioner" or "Aguirre"), a federal prisoner, has filed a "Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody," [Doc. 100]. The United States has responded in opposition, [Doc. 112], and the time for any reply by Aguirre has passed.[1] The matter is, therefore, now ripe for disposition. The Court has determined that the files and records in the case conclusively establish that Aguirre is not entitled to relief under § 2255 and no evidentiary hearing is necessary. For the reasons which follow, the petitioner's § 2255 motion lacks merit and will be denied and the case dismissed.

**I. Procedural and Factual Background**

Alfonzo Chavez Rojas ("Rojas") and Emanuel Flores Sanchez (real name Tobias Flores Aguirre), were charged in this Court by criminal complaint on October 26, 2006, with distribution of 50 grams or more of a mixture and substance containing a detectable amount

---

[1] By order entered on April 12, 2012, the Court directed Aguirre to submit any reply to the government's response on or before May 10, 2012. [Doc. 114].

of cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). [Doc. 1]. On November 7, 2006, Rojas and Aguirre were indicted by the federal grand jury in a ten count indictment, [Doc. 9]. Aguirre was charged in Count One, along with Rojas, with a conspiracy to distribute and to possess with the intent to distribute 500 grams or more of cocaine hydrochloride and 50 grams or more of cocaine base (crack), Schedule II controlled substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B) and (b)(1)(A); in Count Five, along with Rojas, with the distribution of 50 grams or more of cocaine base (crack), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841 (b)(1)(A); in Count Six with distribution of cocaine hydrochloride in violation of 21U.S.C. §§ 841(a)(1) and 841 (b)(1)(C); in Count Seven with distribution of 50 grams or more of cocaine base (crack) in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); in Count Eight with distribution of cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); in Count Nine with possession of firearms in furtherance of a drug trafficking crime (*i.e.* the drug trafficking crime charged in Count Eight), in violation of 18 U.S.C. § 924(c); and in Count Ten with unlawful reentry into the United States by an alien who had previously been deported and removed from the United States in violation of 8 U.S.C. § 1326.

Among other pretrial motions, the petitioner filed a motion to suppress items seized during the execution of a search warrant at the petitioner's residence at 1089 Wilburn Road, Whitesburg, Tennessee, on October 26, 2006, alleging that the affidavit in support of the search warrant did not establish probable cause. [Docs. 27, 28]. Among other items, the

government seized powder and crack cocaine, firearms and money from the Wilburn Road residence on October 26, 2006. On January 17, 2007, the Magistrate Judge issued a report and recommendation recommending that the motion to suppress be denied, [Doc. 41]. After objections to the report and recommendation by Aguirre, [Doc. 43], the Court adopted the report and recommendation of the Magistrate Judge and petitioner's motion to suppress was denied on March 5, 2007. [Doc. 47]. After dismissal of Counts One and Ten, Aguirre proceeded to trial on Counts Five through Nine of the indictment on October 16, 2007. At the conclusion of a two day trial, a jury found Aguirre not guilty of Counts Five, Six and Seven but guilty as to Counts Eight and Nine. [Doc. 69].

A Presentence Investigation Report (PSR) was prepared by the United States Probation Office and disclosed to the parties on February 14, 2008. Aguirre's total offense level was established at 26 with respect to Count Eight which, with a criminal history category of I, resulted in a guideline range for imprisonment of 63 to 78 months. By statute, Aguirre faced a 60 month term of imprisonment as to Count Nine with that term of imprisonment to run consecutively to the sentence imposed as to Count Eight. Aguirre objected to the PSR; these objections were overruled by the Court, and on March 17, 2008, petitioner was sentenced to 78 months of imprisonment as to Count Eight and a consecutive, statutorily-mandated term of 60 months of imprisonment as to Count Nine, for an effective sentence of 138 months. Judgment was entered on March 28, 2008. [Doc. 83]. Petitioner then appealed and on May 17, 2010, the Sixth Circuit affirmed petitioner's convictions and sentence. *United States v. Aguirre*, 605 F.3d 351 (6th Cir. 2010). Petitioner's § 2255 motion

3

Case 2:06-cr-00076-JRG-MCLC   Document 116   Filed 08/02/12   Page 3 of 17   PageID #: 600

was then timely filed on December 20, 2010.

The facts in the case were summarized by the Sixth Circuit in its opinion as follows:

> In the summer of 2006, Morristown Police Detective Michael Hurt began investigating the drug trafficking activities of Alfonzo Rojas. Rojas had two businesses in Morristown: a junkyard called "G&G Auto Parts" and a body shop on Main Street.
>
> On July 11, 2006, Officer Hunt arranged to have Solomon purchase three ounces of crack cocaine from Rojas. Solomon made a recorded telephone call to Rojas, who agreed to meet her at the junkyard. Solomon was provided with $2,550 to purchase the crack cocaine and equipped with a listening device and a digital recorder so that agents could listen to the conversation. Officers followed Solomon to the junkyard and parked an eighth of a mile away. Because of the junkyard's location, the officers were not able to conduct visual surveillance of the transaction.
>
> Rojas did not have the drugs with him when Solomon arrived and, according to Officer Hunt, Solomon waited approximately two and a half hours for the crack cocaine to be delivered. When the drugs arrived, Solomon advised the officers that the person who delivered the drugs would be leaving in a late 90's Jeep. Officer Hurt observed the jeep drive past, but he could not follow it without being noticed by the driver and, from his position, he could not tell who was driving the jeep. Solomon testified that Aguirre delivered the crack to Rojas.[1]
>
> > [1]At sentencing, the district court "simply refuse[d] to credit Ms. Solomon's testimony" and noted that [c]learly the jury did not credit Ms. Solomon's testimony, nor did the jury find the corroboration of her testimony sufficient to find beyond a reasonable doubt that Mr. Aguirre had committed the offenses charged in Count 5, 6, and 7." R. 95 Sentencing 14-15) Solomon testified that she had previously given false information under oath at trial.
>
> After this first transaction, Solomon began working for Rojas at the junkyard. She called Officer Hurt one day and told him that the man who had delivered the drugs on July 11, 2006 was leaving the junkyard driving a gray S-10 Chevy pickup truck. Officer Hurt immediately called an officer on duty in a marked cruiser, who

effected a traffic stop. During the stop, Officer Hurt photographed the driver. The photos, which were admitted into evidence, showed Aguirre.

On another day, Solomon told Officer Hurt that Aguirre would be at the body shop. Aguirre was driving a bright blue S-10 pickup truck. After Aguirre left the body shop, officers followed him to a double-wide trailer at Wilburn Avenue (the "Wilburn residence") and observed him go up to the front door and use a key to open the residence, which he then entered.

On October 24, 2006 Officer Hunt met with Solomon and had her place a recorded phone call to Rojas for an ounce of crack cocaine. She was provided with $900 to make the purchase and fitted with recording equipment. Officers video-taped the transaction. After Solomon arrived at the body shop to pick up the drugs she had ordered, Aguirre arrived in a bright blue S-10 pickup truck, exited the vehicle, and entered the shop. Solomon was initially waiting out in the van. A few minutes later, Aguirre and Rojas exited the office, Rojas patted Aguirre on the back, and Aguirre left. Rojas then went over to Solomon, and Solomon walked into the office. Rojas picked up a box and followed her in, and soon Solomon exited the office, got into her van, and met with the officers. She disclosed that Rojas had sold her powder cocaine instead of crack cocaine and, consequently, that it had cost $50 less than expected. After Aguirre left the body shop, followed by officers, he drove straight to the Wilburn residence.

On October 26, 2006 the officers obtained a search warrant for the Wilburn residence and arranged for Solomon to purchase another three ounces of crack from Rojas. Officers were observing the Wilburn residence when Solomon called Rojas, and these officers were informed of the time of Solomon's call. Shortly after the call, officers observed Aguirre leaving the Wilburn residence, and they followed him straight to Rojas's body shop. Officer Hurt observed and videotaped the transaction at the body shop. Solomon was the first to arrive at the body shop, and she had exited her vehicle and was standing in the parking lot when Aguirre arrived. After he arrived, Aguirre walked toward the body shop's garage. Rojas then arrived and, after Aguirre and Solomon relocated their vehicles, Rojas met with Solomon and a drug transaction occurred. Solomon then left, and officers retrieved the crack cocaine Rojas had sold her. Aguirre was arrested while he was still at the body shop; he did not have any drugs or money on him.

5

> The officers then went to the Wilburn residence and executed their search warrant. No one was present. When they entered, they observed a picture of Aguirre and a female hanging above the televison, and they found male and female clothing and personal belongings, as well as the belongings of a child. In the house, the officers found two handguns, approximately a quarter kilogram of powered cocaine, and approximately seven grams of crack cocaine. One of the handguns was found with a loaded clip. The officers found a wrapper that, based on their experience, they believed had previously contained a kilogram brick of cocaine; the inside of the wrapper was covered with a white residue. The officers found large scales in the kitchen pantry that could be used for weighing drugs and a dietary supplement that is used as a cutting agent with cocaine. There was a stainless steel pot on a stove with a white ring inside of it, which was consistent with cooking crack cocaine. The officers also found a shaving kit which contained multiple rounds of ammunition and $8,020 in cash.

605 F.3d at 353-354

## II. Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, . . . ." 28 U.S.C. § 2255. Under Rule 4 of the Governing Rules, the Court is to consider initially whether the face of the motion itself, together with the annexed exhibits and prior proceedings in the case, reveal the movant is not entitled to relief. If it plainly appears the movant is not entitled to relief, the court may summarily dismiss the § 2255 motion under Rule 4.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States,* 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity,

6

are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996). To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F. 3d 352, 354 (6th Cir. 1994). *See also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F. 2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a non-constitutional error, petitioner must show a fundamental defect in the proceeding that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F. 3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

### III. Analysis and Discussion

Aguirre has filed a somewhat rambling 30 page memorandum in support of his motion. Although difficult to discern in some respects and although petitioner states his claims in multiple parts, it appears that the government properly characterizes petitioner's claims of ineffective assistance of counsel as five general allegations: (1) counsel failed to negotiate a favorable plea agreement for petitioner; (2) counsel failed to properly investigate the case prior to trial or

7

effectively challenge the credibility of a government witness; (3) counsel failed to seek disclosure of impeachment materials; (4) counsel failed to file a motion alleging a violation of Federal Rule of Criminal Procedure 41; and (5) counsel failed to object to the jury instructions regarding Count Eight. Each of these claims lacks merit and will be discussed *seriatim*.

### A. Plea Negotiations

Petitioner states his claim as follows: "Petitioner first contends that he received ineffective assistance of counsel in violation of his Sixth Amendment right to effective assistance of counsel by counsel failing to negotiate a plea agreement bargain offer whereas petitioner has informed counsel of the willingness to enter into a plea-agreement with the government." [Doc. 101-1 at 5]. Petitioner acknowledges that he was informed by defense counsel of a government plea bargain offer for him to plead guilty to Counts One and Two of the indictment, with the remaining counts apparently to be dismissed. He does not allege that counsel advised him to reject the plea agreement, only that she refused to "make an estimation of the prison time petitioner might receive" "because she did not know the exactly [sic] term of imprisonment petitioner would receive at sentencing." Petitioner acknowledges that he would not accept the plea agreement as offered by the government but expressed an interest to counsel in pleading guilty on terms more favorable to him.

Petitioner also acknowledges that just prior to trial counsel conveyed to petitioner a renewed offer for him to plead guilty to Counts One and Two of the indictment but again counsel refused to estimate "the sentence he would receive at the time of the court imposing its sentence." He further acknowledges that he again "opted to reject that plea bargain offer." Petitioner acknowledges that he understood that under the offer made by the government he would have faced a mandatory minimum term of ten years of imprisonment to life but acknowledges that he was told by counsel

that the sentencing court "would impose a sentencing below the term [sic] years mandatory minimum", apparently based on a cooperation provision contained in the plea agreement.

In sum, petitioner alleges that he knowingly rejected the plea bargain offers extended by the government after being informed of the terms of the plea bargain offer and instructed counsel "to work on a better plea agreement offer with the government." He states he would have entered a guilty plea if counsel had persuaded the government to offer "less prison" or guarantee a sentence below the ten year statutory mandatory minimum.

Petitioner's claim related to plea negotiations is significant for what it is ***not***. Petitioner does not claim that, because of erroneous advice from his attorney, he failed to accept a plea agreement offer by the government. *See Magana v. Hofbauer*, 263 F.3d 542, 550 (6th Cir. 2001). Clearly, the right to "effective assistance of competent counsel" extends to the plea bargaining process. *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012). Aguirre does not claim that counsel failed to make him aware of an offer from the government, incorrectly advised him of the offer's terms or failed to accurately assess the risks of accepting an offered plea agreement versus going to trial. In fact, he acknowledges that counsel did all those things but that he then rejected the plea agreement because he did not believe its terms to be sufficiently favorable to him. He simply faults counsel for not being able to convince the government to offer him a plea agreement under the terms he sought. Such a failure does not constitute deficient performance by counsel.

Petitioner seems to assert some sort of entitlement to a plea agreement on terms dictated by him and sufficiently favorable to him from his view. He has no such entitlement. The United States Supreme Court has clearly held that there is "no constitutional right to plea bargain" and nothing requires a prosecutor to accept a plea bargain proposal from a defendant which the prosecutor finds

9

unacceptable. *See Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). Petitioner simply is not entitled to a plea agreement with terms tailored to his liking and counsel cannot be deficient in failing to obtain the desired result. *See United States v. Rice*, 607 F.3d 133 (5th Cir. 2010); *United States v. Gonzalez-Vazquez*, 219 F.3d 37, 43 (1st Cir. 2000) ("'there is no constitutional right to plea bargain'") (quoting *Weatherford*, 429 U.S. at 561)); *United States v. Bissette*, 30 F.3d 131 (Table), 1994 WL 413030 (4th Cir. 1994) (petitioner had "no right to engage in plea negotiations."); *Fields v. Attorney General of State of Md.*, 956 F.2d 1290 (4th Cir. 1992); *United States v. Sammons*, 918 F.2d 592 (6th Cir. 1990)*; United States v. Palmer*, 809 F.2d 1504, 1508 (11th Cir. 1987) (there is no constitutional right to a plea bargain or a plea bargain with favorable terms.) *United States v. Osif*, 789 F.2d 1404, 1405 (9th Cir. 1986) . Since the petitioner had no constitutional right to plea bargain, it certainly clearly follows that he had no right to a plea bargain on more favorable terms. This claim by petitioner lacks merit.

      **B.**      **Failure to Investigate**

Petitioner generally claims that "counsel was ineffective for failing to perform an investigation and review the file of the case before trial to find exculpatory evidence would [sic] have changed the course of the proceeding." Although not completely clear, Aguirre appears to argue that counsel did not conduct sufficient investigation "to discover the government's witness lies and contradiction in her testimony while testifying at trial."

It is clearly established that counsel has a duty to "make reasonable investigation," *Strickland,* 466 U.S. at 691, and is obligated "to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). Trial counsel also have an obligation to investigate possible methods for impeaching a

10

prosecution witness and failure to do so may constitute ineffective assistance of counsel. *Vasquez v. Bradshaw*, 345 Fed. App'x 104, 115 (6th Cir.2009) (citing *Tucker v. Ozmint*, 350 F.3d 433, 444 (4th Cir. 2003)).

Petitioner's argument regarding this claim fails for a very simple reason. A motion under § 2255 must consist of something more than legal conclusions unsupported by factual allegations. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Machibroda v. United States*, 368 U.S. 487, 495-96 (1962); *Short v. United States*, 504 F.2d 63 (6th Cir. 1974). When a petitioner files a § 2255 motion, he must set forth facts entitling him to relief. *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) (collecting cases).

"Habeas corpus petitions must meet heightened pleading requirements." *McFarland v. Scott*, 512 U.S. 849, 856 (1994). Rule 2 of the Rules Governing § 2255 Proceedings For The United States District Courts requires that the motion, among other things, "specify all grounds for relief available to the moving party" and "state the facts supporting each ground." Rule 4 requires the court to *sua sponte* dismiss a § 2255 motion without ordering a responsive pleading "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the petitioner is not entitled to relief." Federal courts are thus authorized to dismiss summarily a § 2255 petition that appears legally insufficient on its face. *McFarland*, 512 U.S. at 856.

Aguirre's motion falls far short of these standards. He makes only conclusory allegations without any factual allegations at all to support his claims. The Court, therefore, finds that petitioner's allegations, devoid of factual support, are facially insufficient to support a claim for relief under § 2255. *Siers v. Ryan*, 773 F.2d 37, 45 (3d Cir. 1985) *cert. denied*, 490 U.S. 1025 (1989) (dismissal warranted when "it appears on the face of the petition that petitioner is not entitled

11

to relief."). *See also United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) (vague and conclusory allegations contained in a petition may be disposed of summarily without further investigation by the district court); *Oliver v. United States*, 961 F.2d 1339, 1343 n.5 (7th Cir. 1992) (finding that a § 2255 petition cannot stand on vague and conclusory assertions of a constitutional violation; rather, the petition must set forth facts with sufficient detail to point the district court to the real possibility of a constitutional error); *Shah v. United States*, 878 F.2d 1156, 1161 (9th Cir. 1989) (holding that vague or conclusory allegations warrant summary dismissal of § 2255 claims); *United States v. Aiello*, 814 F.2d 109, 113-14 (2d Cir. 1987) (holding that a § 2255 petition must be based on more than "[a]iry generalities, conclusory assertions and hearsay statements."); *United States v. Unger*, 635 F.2d 688, 691 (8th Cir. 1980) (holding that "[c]onclusory assertions that a defendant's pleas were involuntary and coerced are insufficient.").

As the government argues, the petitioner does not provide sufficient factual support for his allegation here to allow the government to meaningfully respond to the claim. The claim consists of nothing more than conclusory sentences. The petitioner never identifies the government witness to whom he is referring and he does not identify any of the "impeaching evidence" which he claims could have been discovered through a reasonable investigation. Indeed, to the extent Aguirre refers to government witness Melissa Solomon, her testimony was in fact significantly impeached through cross-examination by defense counsel at trial and it is likely that the jury's verdicts of not guilty as to Counts Five, Six and Seven is because those counts were based largely on Solomon's testimony. Because petitioner has done nothing more with this claim other than to allege conclusory statements which lack any factual support, this claim lacks merit.

12

### C. Disclosure of Impeachment Materials

Petitioner faults counsel for not filing a "motion for disclosure of impeaching information." This claim suffers from the same fatal deficiency as the prior claim. Even though it is true that counsel did not file such a motion with that title, counsel did joint the motions on behalf of the co-defendant seeking disclosure of discovery material. Furthermore, it is clear that the government turned over exculpatory materials in their files pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972).

Petitioner does not identify any additional impeaching information which could have been obtained through the motion for which he faults counsel for not filing nor does he indicate how such material would have affected the outcome of the trial. In short, he has failed to make anything other than conclusory allegations and has support this allegation with no factual allegations. This claim lacks merit .

### D. Compliance With Rule 41

Here, petitioner claims ineffective assistance of counsel because defense counsel failed "to raise a challenge to the government agents [sic] violation of the provisions of Federal Rules of Criminal Procedure 41." More specifically, petitioner argues that the search warrant was executed without the petitioner's presence and the officers performed the search outside the scope of the search warrant. Secondly, petitioner claims he was not provided a copy of the search warrant "before the execution of the search warrant." Third, petitioner argues that the inventory prepared by the officers was prepared in violation of "Rule 41(1)(B)" [sic] by preparing an inventory in the presence of the person whose property was taken.

13

### 1. Petitioner's Presence at the Time of the Search and Search Beyond the Scope of the Warrant

First of all, petitioner's argument that he had some right to be present at the time the search warrant was executed at 1089 Wilburn Road is frivolous and finds no support in the provisions of Rule 41. There is absolutely no requirement that the petitioner, whether in custody or not, be present at the time of the execution of the search warrant. Secondly, it is difficult for the Court to discern exactly what claim the petitioner is making with respect to the extent of the search. If he is simply claiming that the officers who executed the warrant searched for items outside the scope of those defined in the warrant, he provides absolutely no factual support for the allegation and it fails for the same reason the prior two claims failed. If he is now claiming that the warrant was an invalid "general" warrant, he has procedurally defaulted that claim. A petitioner is procedurally barred from raising claims in a § 2255 motion, even those of constitutional magnitude, to which no contemporaneous objection was made or which were not presented on direct appeal. *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Nagiv v. United States*, 90 F.3d 130, 134 (6th Cir. 1996). Where a petitioner has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a motion under § 2255 only if the defendant first demonstrates either cause for the default and actual prejudice or that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner here makes not effort to demonstrate either cause or prejudice and he clearly makes no claim of actual innocence.

### 2. Petitioner's Receipt of a Copy of the Search Warrant

Rule 41(f)(1)(C) requires that "[t]he officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken *or* leave a copy of the warrant and receipt at the place where the

14

officer took the property." Fed. R. Crim. P. 41(f)(1)(C) (emphasis added). Petitioner cites no authority for his argument that a copy must be given to the owner of the property to be seized *prior* to the search and, indeed, no such authority exists. Indeed, there is no requirement in Rule 41 that a copy of the warrant be given to the owner of the seized property at all. The Rule simply requires, alternatively, that a copy of the warrant be given "to the person from whom, or from whose premises, the property was taken" or left at the place searched. Petitioner offers no facts to suggest that this requirement of Rule 41 was not fulfilled.

### 3. Inventory

Rule 41(f)(1)(B) requires the officer who prepares the inventory to "do so in the presence of another officer and the person from whom, or from whose premises the property was taken." Petitioner complains that he was not present when the inventory was prepared. While the factual allegation is apparently true, because petitioner was in custody, petitioner's argument ignores the fact that the Rule also provides that if "the person from whom, or from whose premises, the property was taken" is not present, then the officer must "prepare and verify the inventory in the presence of at least one other credible person." Fed. R. Crim. P. 41(f)(1)(B). There clearly is no requirement that the petitioner be present either when the search is executed or when the fruits of the search are inventoried and this argument lacks merit.

### E. Jury Instructions

Petitioner next complains that counsel was ineffective for failing to challenge the trial court's instructions to the jury with respect to Count Eight, which he erroneously states charged him with "knowing possession of a firearm in furtherance of a drug crime." Actually, Count Nine charged petitioner with a violation of 18 U.S.C. § 942(c) and it is the propriety of the jury instruction

15

regarding Count Nine which he apparently challenges. Petitioner makes, as best the Court can discern, two specific claims about the jury's instructions. First, he claims that the jury was not instructed that the government must prove that the firearm was possessed in furtherance of a drug crime, that is, that "the firearm was possessed to advance or promote the commission of the underlying [drug trafficking] offense." He also seems to suggest that the Court did not instruct the jury that the government had the burden of proving each and every element of the offense beyond a reasonable doubt and somehow shifted the burden of proof to the petitioner. This claim is meritless, as the government argues, because the record affirmatively shows that the Court did indeed instruct the jury on these matters. The Court specifically instructed the jury that the government had the burden of proving each element of the crime beyond a reasonable doubt. [Doc. 94, T. Tr. at 171-72]. Furthermore, the Court specifically defined the statutory language "in furtherance of" to mean that the "firearms were possessed to advance or promote the crime charged in Count Eight (the drug trafficking offense) and that the firearms were strategically located so that they were quickly and easily available for use." [Id. at 174].

### IV. Conclusion

For the reasons set forth above, the Court holds petitioner's conviction and sentencing were not in violation of the Constitution or laws of the United States. Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be DENIED and his motion DISMISSED.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth

Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id*. at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id*.

Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Having examined the petitioner's claim under the *Slack* standard, the Court finds that reasonable jurists could not find that this Court's dismissal of petitioner's claims was debatable or wrong. Therefore, the Court will deny petitioner a certificate of appealability.

A separate judgment will enter.

So ordered.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE